UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANTQUAN DUPREE CLAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF SAN BERNARDINO et al.,<br><br>　　　　Defendants. | No. CV 14-00844-GHK (DFM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## INTRODUCTION

Plaintiff Antquan Dupree Clay ("Plaintiff"), a pretrial detainee at the West Valley Detention Center in Rancho Cucamonga, California, filed a pro se civil rights Complaint on May 8, 2014, after being granted leave to proceed in forma pauperis. Dkt. 3 ("Complaint").[1]

In his Complaint, Plaintiff names the following Defendants in their individual and official capacities: (1) F. Harris, Deputy Sheriff; (2) Lang, Deputy Sheriff; (3) G. Foxwell, Deputy Sheriff; and (4) Robert Warrick,

---

[1] All page citations to the Complaint are to the CM/ECF pagination.

Sergeant. Id. at 3-4. Each of the Defendants is alleged to have worked at WVDC. Id. at 3-5. Plaintiff also names the County of San Bernardino in his caption and his prayer for relief. Id. at 1, 6.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint before ordering service for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.
## SUMMARY OF PLAINTIFF'S ALLEGATIONS

As best the Court can tell, the focus of Plaintiff's Complaint is a strip search and cavity check inflicted on Plaintiff when he returned to the WVDC facility from a court appearance on September 13, 2013. Plaintiff returned to WVDC at about 12:45 p.m. from the Central Detention Center. Complaint at 5. Upon his arrival at WVDC, Harris "conducted an improper strip search force (cav[i]ty) check." Id. Plaintiff further alleges that Lang and Foxwell both engaged in a "sexual assault on an inmate unlawful penetration by foreign object (force) while in restraints." Id. Plaintiff alleges that Sgt. Warrick "mishandl[ed] a criminal investigation [by] fail[ing] to notify the (police) department when crime happen[ed] in jurisdiction." Id.

Plaintiff alleges an Eighth Amendment claim grounded in his right to be free from cruel and unusual punishment. Id. He also invokes the Ninth Amendment's protection of rights not specifically enumerated elsewhere in the Constitution. Id. He seeks an award of compensation and pain and punitive damages from each of the Defendants. Id. at 7. He also seeks an award of damages for pain and suffering from the County of San Bernardino. Id.

///
///

## III.

## STANDARD OF REVIEW

The Court's screening of the Complaint under the foregoing statutes is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06; see, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment").

///
///
///
///
///

## IV.

## DISCUSSION

### A. Plaintiff's Allegations Are Insufficient to State a Claim Against the Defendants in Their Official Capacities

Plaintiff names each of the Defendants in his or her official capacity. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. This Court will accordingly analyze whether Plaintiff has stated a claim against the County of San Bernardino.[2]

A local government entity such as the County of San Bernardino "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Thus, the County may not be held liable for the alleged actions of the individual defendants whose alleged conduct gave rise to Plaintiff's claims unless "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers," or if the alleged constitutional deprivation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the

---

[2] This analysis also applies with equal force to the County as defendant. As noted above, the Complaint is unclear about whether the County is named as a defendant.

body's official decision-making channels." Monell, 436 U.S. at 690-91.

Here, Plaintiff has failed to identify any regulations or policy statements of the County, or officially adopted or promulgated decisions from the County, the execution of which by the individual Defendants allegedly inflicted the injuries about which he is complaining. The Court therefore concludes that Plaintiff has failed to allege sufficient facts for the Court to "draw the reasonable inference" that the County has a governmental custom of engaging in the kind of unconstitutional conduct that Plaintiff is alleging occurred here. See, e.g., Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); Thompson v. Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds, Bull v. City & Cnty. of S.F., 595 F.3d 964, 981 (9th Cir. 2010) (en banc). Accordingly, the Complaint fails to state a claim against the Defendants in their official capacities.

**B.   Plaintiff Fails to State a Claim Against Sgt. Warrick**

Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. See, e.g., Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). In Iqbal, 556 U.S. at 676, the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior liability." However, the Ninth Circuit has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a

claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011). The Ninth Circuit thus held:

> A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'
>
> 'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

Id. at 1207-08 (internal citations omitted, alterations in original). In addition, to premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff names Sgt. Warrick as a Defendant but fails to set forth

7

any specific allegations that he personally participated in Plaintiff's treatment. Plaintiff alleges that Sgt. Warrick is liable because he was informed of the other Defendants' alleged conduct and failed to notify the police department. Complaint at 5-6. At no point does Plaintiff allege that Sgt. Warrick was personally involved in the alleged constitutional deprivations. Nor does Plaintiff set forth any factual allegations that Sgt. Warrick either personally promulgated any policy that had a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to the other Defendants' alleged conduct.[3] Plaintiff's claim against Sgt. Warrick accordingly fails to state a claim.

C. **Plaintiff's Eighth Amendment Claim Fails to State a Claim**

The Eighth Amendment does not apply to pretrial detainees. See Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). Rather, claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause. See, e.g., Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002).

The Supreme Court has stated that "the Due Process clause protects a pretrial detainee from the use of excessive force that amounts to punishment."

---

[3] By way of contrast to the Complaint here, the complaint in Starr specifically alleged numerous incidents in which inmates in Los Angeles County jails had been killed or injured because of the culpable actions of the subordinates of Sheriff Baca; specifically alleged that Sheriff Baca was given notice of all of these incidents; specifically alleged that Sheriff Baca also was given notice, in several reports, of systematic problems in the county jails under his supervision that had resulted in these deaths and injuries; and specifically alleged that Sheriff Baca did not take action to protect inmates under his care despite the dangers created by the actions of his subordinates, of which he had been made aware. See Starr, 652 F.3d at 1216.

See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989); see also Bell v. Wolfish, 441 U.S. 520, 535 (1979). In County of Sacramento v. Lewis, 523 U.S. 833 (1998), the Supreme Court held that, to violate the substantive due process component of the Fourteenth Amendment, an official's actions must "shock the conscience" (see id. at 847), and that officials commit shocking actions when they use force with the intent to harm a person (see id. at 853-54; see also White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (holding that to show a violation of substantive due process, a pretrial detainee must show "egregious government conduct in the form of excessive and brutal use of physical force," and that the relevant factors are "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) whether force was applied in a good faith effort to maintain and restore discipline")).

Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. See Bell, 441 U.S. at 561. More specifically, every detainee, regardless of the type or seriousness of the offense, who will be admitted to the general population of any prison or detention facility may be required to undergo a close visual inspection while undressed because "[c]orrectional officers have a legitimate interest, indeed a responsibility, to ensure that [facilities] are not made less secure by reason of what new detainees may carry in on their bodies," including contraband and contagious infections. See Florence v. Board of Chosen Freeholders of the County of Burlington, 132 S. Ct. 1510, 1513, 1518-20 (2012) (holding that county's search procedures did not violate the Fourth and Fourteenth Amendments because there was a reasonable balance between inmate privacy and the needs of the institution, and rejecting petitioner's proposal—that new detainees not arrested for serious crimes or for offenses involving weapons or drugs be exempt from invasive searches unless

1  they give officers a particular reason to suspect them of hiding contraband—as
2  unworkable).
3      Plaintiff's allegations are factually insufficient to state a claim for relief.
4  Plaintiff provides very little detail regarding the allegedly abusive search. The
5  Court will grant Plaintiff an opportunity to amend his complaint to include an
6  abusive search claim under the Fourteenth Amendment.[4] However, Plaintiff
7  must provide facts which demonstrate that indeed the search was shocking and
8  unreasonable. Plaintiff must set forth specifically the events leading up to the
9  search, the manner in which it was conducted, why it was conducted and
10 where it was conducted. Plaintiff bears the burden to demonstrate that the
11 invasion of his personal rights outweighed any need for the search. In addition,
12 Plaintiff must support the allegation that each named Defendant caused or
13 personally participated in causing the alleged deprivation of his constitutional
14 rights. Plaintiff must also identify each named Defendant clearly.
15 **D.  Plaintiff's Ninth Amendment Claim Fails to State a Claim**
16     Plaintiff alleges that the Defendants' conduct violated his rights under
17 the Ninth Amendment. The Ninth Amendment "has never been recognized as
18 independently securing any constitutional right, for purposes of pursuing a
19 civil rights claim." Strandberg v. City of Helena, 791 F.2d 744, 748 (9th
20 Cir.1986); see San Diego County Gun Rights Committee v. Reno, 98 F.3d
21 1121, 1125 (9th Cir.1996). Accordingly, Plaintiff's Ninth Amendment claim
22 will be dismissed.

---

[4] If plaintiff chooses to file an Amended Complaint, he should, as discussed above, reference the Fourteenth Amendment instead of the Eighth Amendment.

## V.

## CONCLUSION

Because Plaintiff's official-capacity claims against all Defendants, his supervisory claim against Sgt. Warrick, and his Eighth and Ninth Amendment claims fail to state claim on which relief may be granted, the Complaint is subject to dismissal. Because it is not absolutely clear that Plaintiff's pleading deficiencies cannot be cured by amendment, such dismissal will be with leave to amend. Accordingly, if Plaintiff still desires to pursue his claims, he shall file a First Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file an First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated: May 23, 2014

DOUGLAS F. McCORMICK
United States Magistrate Judge

11